The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning, everyone. We're going to take the cases up in the order in which they appear on the docket. The first three cases have previously been submitted on the briefs. They are Navarro v. Bisignano, Durbin v. Bisignano, Gorovenko v. Active Clean Energy, and we will hear argument in Mata-Yanez v. Bondi. Good morning, Your Honor. Yes, you may proceed. My name is Gary Finn. I'm the attorney for the petitioner Raul Mata-Yanez, and if it pleases the court, I would like to begin by addressing my client's application for cancellation of removal for a non-permanent resident. So in our briefing, in our opening brief particularly, we argued a lot about how we thought that the proceeding had been unfair to the petitioner, to my client, for a number of reasons. The government today is arguing that the only issue before the court with respect to cancellation of removal is the issue of exceptional and extremely unusual hardship, and I agree with that. We agree with that position. That is the only issue today before the court. The Board of Immigration Appeals did not address any of the other issues. So in order for my client to be granted cancellation of removal, he would have to show that his two United States citizen children would suffer exceptional and extremely unusual hardship if he were to be removed from the United States. We believe that my client made that showing before the agency, but actually this is a question that in past years the court did not have jurisdiction to review, but thanks to the recent decision of the Supreme Court in Wilkinson v. Garland, the court now has jurisdiction to review denials of cancellation of removal based on a lack of a finding of exceptional and extremely unusual hardship. The question is what is the standard of review, or that's one of the questions, what would be the standard of review that the court needs to use to review the exceptional and extremely unusual hardship question. So I think the government is arguing that it's a substantial evidence standard. We would like to argue that the court should review the denial of cancellation of removal de novo because there is a question of law involved. In Wilkinson, the Supreme Court said at page 784 that the review of denial of cancellation of removal involves a mixed question of law and fact. It requires a close engagement with the facts. It's a very fact-heavy type of analysis, but it still involves a question of law. And so we think that the court should review de novo. Kevin, didn't in Gonzales-Juarez, the Ninth Circuit as a court, we've held that reviewing whether the BIA erred in applying the exceptional, extremely unusual hardship standard to a given set of facts is reviewed for substantial evidence. I think that was the respondent sent a 28-J letter. Yes, Your Honor, that's true. But in a case like this that I have today with my client, there are really no factual disputes. I'm not sure if there were any factual disputes in Gonzales-Juarez. I read the opinion. It didn't really address that issue. So what is the legal or constitutional challenge you are making then? The legal challenge is that the Board of Immigration Appeals did not correctly apply the law of cancellation of removal to the facts. Okay, but then that is a substantial evidence question. That follows directly with a quote from Gonzales-Juarez. That's true, Your Honor. I would have to concede that point. That's what the case does say. Honestly, I don't know how I can argue around that as of this moment. But yeah, that's what the case says. But I would argue, Your Honor, that even if the court were to review the case using substantial evidence, the court can still find that my client satisfied the requirements, or the one requirement that he failed to satisfy, according to the board, which was the exceptional and extremely unusual hardship. Because this is a case, in our view, that goes beyond the norm. Now, my client has two children. They were much younger at the time of the hearing. They're now 16 and 13. They were born in the United States. They would remain in the United States if the petitioner were to be removed. Their mother is sick. She has a thyroid condition and sometimes is unable to take care of the children. And this man, my client, is a very, very good father. He takes his children on outings. He takes them fishing. He takes them out to eat. He helps them with their homework. And when the mother sometimes is unable to care for the children and the father is very involved, it would really be a shock, I think, for these children to be left without a father. And so I do think that if the record is reviewed carefully, that the court, even under substantial evidence review, the court could find that the petitioner would be eligible for cancellation of removal or that the board erred in finding him ineligible. Council, Judge Gould, if I could interject a question, please. Please. Under the substantial evidence standard, wouldn't we have to say that the record compels a conclusion that the agency erred? Yes, Your Honor, I think you would. Okay, thank you. Yeah, but, you know, even with that, you know, I still think that there is exceptional and extremely unusual hardship in this case. And so the agency did err, and I think the record would compel that conclusion. You know, I would like to say another thing before I allow government counsel her turn. And then I would say about five minutes, I hope, or something like that for rebuttal. I would like to address the issue of voluntary departure that my client was denied. Now, the Board of Immigration Appeals denied voluntary departure in discretion, according to them. But if you look at the reasons, they make a legal error. The board has a legal error in their decision, and this court can review a discretionary denial based on a legal error. And so the legal errors are two that I see. First of all, the Board of Immigration Appeals characterized an arrest that my client had for battery more than 20 years ago and said that that was a domestic violence offense. The government in their briefing argues that since the board used the word offense, they weren't thinking that my client was convicted of anything. He was not convicted. There were no charges filed. But the board says he was arrested for domestic violence, and that's not true. He was arrested for battery. Well, what else they say is they say respondent has a criminal record, including a conviction for driving while under the influence, as well as a domestic violence offense. And that's what is not correct, because he doesn't have a domestic violence offense in his criminal record. That's exactly right, Your Honor. He doesn't. And what's your second claim of legal error in this voluntary departure issue? The board also said, Your Honor, that the petitioner failed to file his income tax return correctly in the year 2014. That's also true, but this was not intentional. And I don't know if it was material. There was no showing that the government lost any revenue. It was just a mistake. It was a mistake. He had just gotten married, and he filed his return incorrectly. What I found to be perplexing about that is I generally understand that you get a lower tax rate if you're married than if you're single. Am I correct about that? Like, did he put himself in a bracket where he'd be taxed at a higher rate accidentally? I think so. I don't hold myself out as a tax expert, but I think that's correct, Your Honor. It's like a marriage discount. I mean, a lot of people get married on January 1 just for that. Yeah, I think that's right. So I don't think, you know, and this man has filed his taxes every year. He made one mistake after he got married. I think people are often confused when they get married how their taxes are going to change, and I don't think there's anything in the record that he intentionally deceived the government on this. Well, assuming we agree with you, what is the appropriate remedy? Because we just would remand for the board to reweigh the factors and reconsider whether it should give voluntary departure to your client. Yes, because the board didn't just deny his relief on discretion. It didn't go through. There's statutory elements that a person needs to meet to qualify for voluntary departure, and the board didn't analyze that. The board just said, well, we're going to deny it in discretion because of the supposed domestic violence offense and the error on the tax returns. Not really considering that the petitioner's equities in this country. Now, the last thing I'm going to say about this, this is potentially a very important relief for my client because if he is denied cancellation of removal and other forms of relief, he would have the option of leaving the country. But in less than five years, his oldest child, who is a U.S. citizen, would be able to petition for him. And so he has the chance of coming back to the United States legally in the future. If he's granted voluntary departure, he may have a shorter waiting time outside the country. So it's very important. So the case should at least be remanded for that purpose, for the agency to deal with that issue. I'll reserve the rest of my time. Actually, I'd like to ask some questions about this voluntary departure issue. So there's nothing in the record as to why he lied on his tax returns. We're speculating, right, that he was disadvantaging himself. We don't know whether there were immigration consequences, anything else that might be benefited by filing as single versus married. That's all speculation. But he did admit that he lied on his 2014 tax returns. He drank ten beers in three hours and drove with his four-year-old in the car. When the police stopped him, he was so drunk he was dizzy. He had to do the nine-month class, which is not for ‑‑ this is unusual for a first offender, for a DUI, but he had 0.2 and above blood alcohol content, which usually you get a three-month class for DUI, for a first-time DUI in superior court, but he did the nine-month class, which was this was a much more serious DUI than your regular run-of-the-mill first-time DUI in superior court. He lied about his drug arrest in 2004, said he couldn't remember the arrest. Then he later says, no, it was all on advice of counsel that I answered that way. So the BIA said as a matter of discretion, he doesn't warrant voluntary departure, even if we assume he has good moral character. So in terms of the agency's discretion, they made the decision, and we have an abuse of discretion review standard. So we have to find that that is illogical, contrary to law, or arbitrary on this record. So let me ask you, how, based on this many number of, you know, he did actually admit that he did lie about the drug arrest as well during his hearing before the IJ. So based on this, like, just full record of discretion, how is that an arbitrary, illogical, or contrary to law decision by the agency? Well, Your Honor, it's contrary to law because the agency weighed the factors incorrectly. It assumed that the petitioner was arrested for domestic violence. He was not. With regard to the incident with the drug arrest, we argue in our opening brief that the advice that people used to get in California court was confusing about whether or not these types of arrests had to be disclosed. And the California legislature even passed a law saying that these types of convictions where there was diversion involved for all noncitizens. I mean, I'm looking at this domestic violence, right? He got a booking number. He got a booking number. He got a court arraignment date. He was arrested. No, he was arrested. So you're saying, I mean, I guess it almost doesn't matter because the BIA said we're assuming he's of good moral character. But in the exercise of discretion, we're saying overall he doesn't qualify. And it is a discretionary decision of the agency. It is. But as I said before, Your Honor, if the discretionary decision is based on a legal error, then the court can review it. And, you know, the balancing the test here, I mean, the petitioner has a lot of positive equities. Yeah, he definitely screwed up when he got that DUI. There's no doubt about that. But there's a lot of positive things. And that weighing of the putting in the scale, the fact that the board thought he was arrested for domestic violence, as opposed to a battery, which is a legally very different type of an arrest, that might have tipped the scales. And so this court can review that. And it should remand it for a new determination on voluntary departure, assuming that the cancellation of removal is not going to be granted. All right. Thank you, counsel. I'll give you some extra time for rebuttal after Ms. Antune. Hello. May it please the court. My name is Monica Antone appearing on behalf of the attorney general. I'll start by addressing voluntary departure, because the first thing that we need to clarify is the scope of the court's jurisdiction to review that denial. Because it was a discretionary denial, the court would not have jurisdiction to reweigh the equities. And that is the same type of discretionary denial that's covered in 8 U.S.C. 1252 A to B.I. And that would apply. I agree we can't reweigh the equities. But in an ordinary case, I wouldn't. But if the BIA relies on something that is not true in weighing the equities, can't we point that out and say, please reweigh and see if you reach the same decision? Not ourselves reweighing, but just saying, you know, characterize this as a domestic violence offense. First of all, it was merely an arrest. And secondly, it wasn't for domestic violence. And then have the agency reweigh. Now, there's nothing to say that the agency wouldn't reach the exact same result. I'm not saying that it would be prohibited from denying voluntary departure. But I'm just saying it needs to reweigh the true facts. I mean, it needs to weigh, in the first instance, things that are true, not things that are false. The dispute that we're discussing is a factual dispute. And that factual dispute would also be outside the scope of the court's jurisdiction. And the government submits that the board did not misconstrue the evidence in a manner that would arise to a legal error. So what we're really talking about is a factual dispute that would also be unreviewable and therefore would not properly be the basis for remand. Oh, I don't see this as a factual dispute. I see this as the record's quite clear. The FBI rap sheet refers to an arrest for battery. And I believe the penal section was 243E, which is a protected domestic relationship. So the record does support the board's... But the BIA said that his criminal record shows he has a domestic violence offense. And he had a mere arrest. And that makes a difference. The word offense is broader than a conviction, and it would cover an arrest. And when that conduct is shown in the record, the board did not mischaracterize the record. I think we have case law to the contrary, that you can't treat an arrest as a conviction. Oh, no, I'm not. The board did not treat the arrest as a conviction. The board is looking at the factual record. So the board's decision distinguishes between a criminal record, including a conviction, for driving under the influence and a domestic violence offense. So the board did not construe the domestic violence incident as a conviction, simply because he was arrested for it. They did not equate the two. And the IJ also states in his decision, on page 61 of the record, there was an arrest for some type of domestic violence offense. So, again, the agency is not considering this to be a conviction. It's only considering it as an arrest. And in a discretionary context, that type of conduct is permissible to consider. But there's no corroborating evidence of, now, I'm unclear on why opposing counsel said this wasn't a domestic violence arrest for a domestic violence offense. It is domestic battery 243E1 of the penal code. But what evidence is there corroborating that that even happened? Just the notation? The notation on the sheet? So there is that, yes, the prosecutor's notation. But there is also an FBI rap sheet, pardon me, at page 586 of the record, showing a 2002 arrest in Riverside. And it states, charge one, one count of BAT, spouse, XSP, date, et cetera. Let's say we agree that the BIA improperly relied on the domestic violence arrest. Is that, is whatever remaining enough to deny Mr. Mattayana's voluntary departure? Or is the error, if it is an error, is that alone enough for us to have to reverse and remand? There are other considerations that the board raised. Those considerations could support a discretionary denial. But at this stage, the court would not be able to come to that conclusion on its own. That's a discretionary determination for the agency to make. And we start to get then into the jurisdictional limitation on a weighing of the discretionary factors. Counsel, what really, I mean, I don't have any quarrel with that. I would, my concern would be just to remand for reweighing of the factors by the BIA. But what do you make of, so ER 1154 is the district attorney complaint dismissal that says there's a lack of sufficient evidence to support this charge. I mean, if there's a lack of sufficient, and this is in the record at ER, I'm not really sure. It's got a bait stamp of 1154, and then it's got a page number handwritten 47. But it says that there was a lack of sufficient evidence to support this charge. Sure, and that would just be the difference between probable cause for an arrest and enough evidence to bring a prosecution that could result in a conviction. And whether the prosecutor found... Okay, all right. I mean, I guess the problem is that in Paredes-Urastirazu, the court explicitly said we would be troubled if this were a case in which the board found a mere fact of arrest probative of whether petitioner had engaged in underlying conduct. But in that case, there was not only an arrest, there was a charge, and there was a diversionary program participation. So you don't have that in this case. So that's why I'm asking, other than this ER 1154 and your FBI RAB sheet, in this case, there really is nothing more than the arrest. I'm just checking my notes. Excuse me. It's 1140, the FBI RAB sheet. Sure. So I... So the one question is, if there's nothing more, which is why I was asking for corroborating evidence, there's nothing more than 1140 and 1154, then was it legal error to consider this arrest? Is that enough to remand, or do you say this is a discretionary decision and look at all of the other factors that could have weighed in this discretionary denial of voluntary departure? And you keep just stating the standard, which we agree with you, what the standard is, but I think you're not answering the question.  If the board's decision is premised on what the court would view to be a legal error over the government's opposition, then the board would have to reweigh that discretionary determination. Counsel? If that's true, counsel, then wouldn't it be a fair result if we were to vacate the order in that respect, discretionary removal, and remand to the agency to weigh the factors excluding arrest? If that is true, then yes. All right, so I'm going to give you one more opportunity because you've declined to. What other factors would the agency have relied on other than the domestic, I guess it's called domestic battery, would the agency have to make its discretionary decision to deny voluntary departure? The agency can rely on numerous factors. It can rely on any other offenses in his criminal history. It could rely on inconsistencies. The tax return, he admitted that he made a misrepresentation, so the point is not whether it was intentional or whether he benefited or not, but his admission to a misrepresentation. The record is open for the board to consider whatever discretionary factors would be appropriate. Is there any evidence in the record that it was a benefit to him to lie, to say single instead of married? Any evidence in the record that it wasn't just a mistake? My understanding of his testimony was that his wife had already filed her tax return, so he filed as single rather than filing an amended return. But there is no evidence either way. Legal? Is that illegal to do that? I mean, he was trying to pay his taxes. I mean, how is that like something to be held against him? Well, what the IJ was concerned about was when he admitted that he made a misrepresentation to the U.S. government. So whether it was beneficial or not was not the IJ's concern. It was that he had admitted to making a misrepresentation. All right. Why don't we get your take on the issue of cancellation of removal, since your friend on the other side spent a lot of time making arguments as to why this is an exceptional and unusual circumstance of hardship for his children? So substantial evidence does support that denial. And applying the standard in Gonzalez-Juarez, out of the ordinary, exceedingly uncommon, deviating in the extreme from the norm, the type of hardship described here, the hardship to the children, which the IJ acknowledged there would be hardship, the difficulty their mother might have at times because of her health condition, but she did also have help from other people. This type of hardship is not the type of hardship that would rise to the level of exceptional and extremely unusual hardship. So the government submits that the court should affirm the denial of cancellation of removal. Well, cancel is the type of hardship here, similar to what the family of anyone deported might be. It's similar, pardon me. It's similar in the economic hardship, in the emotional hardship. And while different applicants might have unique medical concerns, many applicants do see a parent, a caretaker who might have a medical issue, but the care that the children would continue to receive is not so exceptional as to deviate in the extreme from the norm and be exceedingly uncommon. Thank you. And in conclusion, the government submits that the court should largely dismiss the petition for review for lack of jurisdiction and deny the petition for review the remainder of the petition. Thank you. All right. Thank you, counsel. Mr. Finn, I promised you a couple minutes, even though you used up all your time.  Real quick. Regarding this voluntary departure issue again, so counsel stated that the petitioner misrepresented, and that's the end of the story. That's not the law. The law is that misrepresentation has to be intentional, and that's quite well established. In this case, the petitioner took the tax return to his lawyer, and someplace in the record I think the petitioner said that the lawyer said it was okay. Now, I don't like clients that blame things on their lawyer, but the lawyer did have to review it and submit it herself at the time. I wasn't representing the man at the time. And then last thing, Your Honors, is this distinction between the domestic violence and battery. To say that the petitioner was arrested for domestic violence as opposed to battery, that's a legal mistake, and it's not a small mistake. California treats domestic violence much more severely than it does battery. I was just looking up in here the California codes, and the battery is a reason. Let me ask you something. How would that even matter if the BIA assumed he established good moral character? Well, I think, Your Honor, that the question of good moral character and discretion are separate issues. They did find him to be of good moral character in the end, but even if a respondent in removal proceedings or the petitioner here would establish all statutory eligibility requirements, including good moral character, the immigration judge can still deny the case in a matter of discretion. I've had that happen a lot of times.  This is a discretionary decision that we are reviewing for abuse of discretion. And they could have said, based on this whole record, we find that he doesn't meet the equities for voluntary departure. But, Your Honor, if the discretionary determination is based on legal error, then the court can review it. There's a case that's called Bringus-Rodriguez, and I think I said it in my briefs, but a discretionary determination based on legal error is reviewable, and it's a separate issue from the good moral character determination. That's all I have, Your Honors, and I thank you so much for listening to us this morning. Well, I thank both counsel for a good argument, and thank you for appearing by video. I know it's difficult to travel right now.
judges: WARDLAW, GOULD, KOH